FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Oct 13, 2021

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| EVELYN W., | NO:  1:20-CV-03134-LRS |
| Plaintiff, | |
| v. | ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |
| KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY,[1] | |
| Defendant. | |

BEFORE THE COURT are the parties' cross-motions for summary judgment.  ECF Nos. 13, 14.  This matter was submitted for consideration without oral argument.  Plaintiff is represented by attorney D. James Tree.  Defendant is

---

[1]Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew M. Saul as the defendant in this suit.  No further action need be taken to continue this suit.  *See* 42 U.S.C. § 405(g).

represented by Special Assistant United States Attorney Erin F. Highland.  The Court, having reviewed the administrative record and the parties' briefing, is fully informed.  For the reasons discussed below, the Court **GRANTS, in part,** Plaintiff's Motion for Summary Judgment, ECF No. 13, **DENIES** Defendant's Motion for Summary Judgment, ECF No. 14, and **REMANDS** the case for to the Commissioner for additional proceedings.

## JURISDICTION

Plaintiff Evelyn W.[2] filed an application for Disability Insurance Benefits (DIB) on September 28, 2016, Tr. 70, 80, alleging disability since July 1, 2016, Tr. 35[3], due to a back injury/pain, sporadic right arm and leg numbness, and neck pain, Tr. 201.  Benefits were denied initially, Tr. 94-100, and upon reconsideration, Tr. 102-08.  A hearing before Administrative Law Judge Kimberly Boyce ("ALJ") was conducted on June 21, 2019.  Tr. 32-69.  Plaintiff was represented by counsel

---

[2]In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's first name and last initial, and, subsequently, Plaintiff's first name only, throughout this decision.

[3]The Court notes there is no copy of Plaintiff's application in the file. Therefore, the Court relies on the alleged onset date put on the record at Plaintiff's ALJ hearing.

and testified at the hearing.  *Id*.  The ALJ also took the testimony of vocational

expert Marilyn Thomas.  *Id*.  The ALJ denied benefits on August 8, 2019.  Tr. 13-

26.  The Appeals Council denied Plaintiff's request for review on July 9, 2020.  Tr.

1-6.  Therefore, the ALJ's decision became in the final decision of the

Commissioner.  The matter is now before this Court pursuant to 42 U.S.C. §§

405(g).  ECF No. 1.

## BACKGROUND

The facts of the case are set forth in the administrative hearing and

transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner.

Only the most pertinent facts are summarized here.

Plaintiff was 62 years old at the alleged date of onset.  Tr. 70.  She received

her CDL in 1975 and completed two years of college in 1990.  Tr. 202.  Plaintiff's

reported work history includes jobs as cashier, customer service at a call center,

housekeeper, school bus driver, and truck driver.  Tr. 202.

Plaintiff was initially injured in a workplace accident in the return

department at Fry Electronics in January of 2013.  Tr. 47, 50.  She returned to

work at the Fry Electronics call center in an accommodated position and worked

there until she left in June of 2016.  Tr. 47-49, 202.  She reported that she was able

to continue working after her accident because she was allowed a ten-to-twenty-

minute break every hour to get up and move around and she could lay down if

necessary.  Tr. 41, 48-49.  At application, she stated that she stopped working on

June 30, 2016, due to her conditions.  Tr. 201.  However, at the hearing, Plaintiff reported that she left the call center job at Fry Electronics because her father-in-law passed away and her family had to relocate to sell his home.  Tr. 41.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by  42 U.S.C. §§ 405(g), 1383(c).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance."  *Id*. (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation.  *Id*.

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation."  *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).  Further, a district court will not reverse an ALJ's decision on account of an error that is harmless.  *Id*.  An error is harmless where it is "inconsequential to the

[ALJ's] ultimate nondisability determination." *Id*. (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. See 20 C.F.R. § 404.1520(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, the analysis

proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 404.1520(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 404.1520(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity ("RFC"), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in

the past (past relevant work).  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience.  20 C.F.R. § 404.1520(a)(4)(v).  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(g)(1).  If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  20 C.F.R. § 404.1520(g)(1).

The claimant bears the burden of proof at steps one through four.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## THE ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff has not engaged in substantial

gainful activity since July 1, 2016, the alleged onset date.  Tr. 15.  At step two, the

ALJ found that Plaintiff has the following severe impairments: herniated discs in

the lumbar spine with radiculopathy to the right leg in an L5 distribution and

cervical disc disease with foraminal stenosis to the right side.  Tr. 16.  At step

three, the ALJ found that Plaintiff does not have an impairment or combination of

impairments that meets or medically equals the severity of a listed impairment.  Tr.

16.  The ALJ then found that Plaintiff has the RFC to perform light work as

defined in 20 CFR § 404.1567(b) with the following limitations:

> she can occasionally climb, balance, stoop, kneel, crouch, and crawl;
> can occasionally reach overhead with the non-dominated right upper
> extremity, and can otherwise frequently reach, handle, and finger with
> the non-dominant right upper extremity; and can perform work in
> which concentrated exposure to extreme cold, heat, wetness,
> pulmonary irritants, and vibration is not present.

Tr. 16-17.  At step four, the ALJ identified Plaintiff's past relevant work as school

bus driver, housekeeper cleaner, tractor trailer truck driver, customer service clerk,

and cashier II.  Tr. 23.  The ALJ found she could perform her past relevant work as

a customer service clerk.  Tr. 23.  The ALJ then made an alternative step five

finding that, considering Plaintiff's age, education, work experience, and RFC,

there were other jobs that exist in significant numbers in the national economy that

Plaintiff could perform, including order clerk.  Tr. 24-25.  The ALJ concluded that

Plaintiff was not under a disability, as defined in the Social Security Act, from July

11, 2016, through the date of her decision.  Tr. 25.

**ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying her DIB benefits under Title II of the Social Security Act. ECF No. 13. Plaintiff raises the following issues for this Court's review:

1.    Whether the ALJ properly evaluated the medical opinion evidence;

2.    Whether the ALJ properly addressed Plaintiff's symptom statements; and

3.    Whether the ALJ made proper determinations at steps four and five.

**DISCUSSION**

**1.    Medical Opinion Evidence**

Plaintiff challenges the ALJ's rejection of the medical opinions that she required additional breaks throughout the workday. ECF No. 13 at 6-11. In doing so, Plaintiff argues that the ALJ erred in the weight assigned to the opinions of the worker's compensation evaluations, work status reports, Felicia Radu, M.D., and the State agency medical reviewer. *Id*.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201–02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight

ORDER ~ 9

than a reviewing physician's opinion.  *Id.*

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). Conversely, "[i]f a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)).  The specific and legitimate standard can be met by the ALJ setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating her interpretation thereof, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  The ALJ is required to do more than offer her conclusions, she "must set forth [her] interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

## A.    Worker's Compensation Evaluations

On April 25, 2013, Dr. Radu opined that Plaintiff requires a "10-minute stretch break every 60 minutes as needed.' Tr. 547.  On June 13, 2013, Dr. Aachi stated that Plaintiff was going back to modified work. Tr. 574.  On November 20, 2014, Dr. Tran stated Plaintiff required "frequent breaks of 5 minutes every 55 minutes from activities." Tr. 716.

The ALJ assigned some weight to the opinions expressed in these

evaluations because "there are so many in the file," they were "temporary in

nature," and they were "written when the claimant was still undergoing treatment."

Tr. 22.  She also found that the opinions were "vague in that the specific

limitations for overhead work, stooping, bending, kneeling, and squatting is not

indicated in terms of frequency." *Id*.

The ALJ's rationale that there were so many in the file, they were

temporary, and they were written while Plaintiff was undergoing treatment is not

specific and legitimate.  First, the ALJ only discussed three evaluations.  Tr. 22.

Therefore, the numerousness of the opinions is irrelevant.

Second, while these opinions were temporary in nature and made while

Plaintiff was undergoing treatment, they were consistent with the work status

reports during the same period that ultimately concluded with Dr. Radu's opinion

that Plaintiff had met maximum improvement and continued to require additional

breaks beyond what is normally allowed during a workday.  *See infra*.  Therefore,

in light of the record as a whole, these temporary opinions actually demonstrate a

long-term limitation in the workplace.  *See Hill*, 698 F.3d at 1159 ("a revieing

court must consider the entire record as a whole").  Therefore, this is not specific

and legitimate.

Third, the opinion regarding the need for additional breaks were not vague.

Dr. Radu and Dr. Tran were both specific regarding additional breaks and provided

both the frequency and duration of the breaks.  Therefore, this is not a specific and

1  legitimate reason for rejecting the opinions.

2  **B.    Work Status Reports**

3      Following Plaintiff's January of 2013 on-the-job injury, her providers

4  completed work status reports as part of her worker's compensation claim.  On

5  January 24, 2013, February 13, 2013, and February 20, 2013, Dr. Gunasekera

6  completed  Work Status Reports and did not opine that Plaintiff would require

7  additional breaks.  Tr. 439, 440, 524.  On March 7, 2013, Dr. Gunasekera opined

8  that Plaintiff would require a "10 [minute] stretch break every 120min from sitting."

9  Tr. 432.  On March 21, 2013, Dr. Gunasekera opined that Plaintiff would require a

10  "10 [minute] stretch break every 45min from sitting."  Tr. 431, 531.  On April 4,

11  2013, Dr. Gunasekera opined that Plaintiff "[m]ust take a 10 minute stretch break

12  every 60 minutes from sitting."  Tr. 430.  On April 18, 2013, Physician Assistant

13  Philip Gosvener opined that Plaintiff "[m]ust take a 10 minute stretch break every 60

14  minutes from sitting."  Tr. 429, 538-39.  On April 25, 2013, Dr. Radu opined that

15  Plaintiff "[m]ust take a 10 minute stretch break every 60 minutes."  Tr. 427, 554.

16  On May 15, 2013, Dr. Munoz de Laborde completed a Work Status Report and did

17  not opine that Plaintiff required additional breaks.  Tr. 428.  On May 23, 2013, Dr.

18  Young completed a Work Status Report and did not opine that Plaintiff would

19  require regular breaks.  Tr. 419, 555.  On June 13, 2013, Dr. Aachi opined that

20  Plaintiff "[m]ust take a 5 minute stretch break every 55 minutes from activities."  Tr.

21  418.  On November 14, 2013, December 12, 2013, December 26, 2013, January 23,

2014, Dr. Aachi opined that Plaintiff "[m]ust take a 10 minute stretch break every 60 minutes from activities." Tr. 404, 405, 408, 422. On March 6, 2014, May 1, 2014, May 15, 2014, May 29, 2014, June 26, 2014, Dr. Aachi opined that Plaintiff "[m]ust take a 5 minute stretch break every 55 minutes from activities." Tr. 370, 375, 376, 395, 396, 420. On July 24, 2014, Dr. Aachi provided an opinion and did not state that Plaintiff would require additional breaks. Tr. 368. However, a second opinion by Dr. Aachi with the same date states that Plaintiff "[m]ust take a 5 minute stretch break every 55 minutes from activities." Tr. 369. On November 20, 2014, Dr. Sherman opined that Plaintiff "[m]ust take a 10 minute stretch break every 60 minutes from activities." Tr. 367. On January 22, 2015, March 5, 2015, and April 16, 2015, Dr. Radu completed medical status report opinions that Plaintiff "[m]ust take a 10 minute stretch break every 60 minutes as needed." Tr. 350-51, 364. On July 25, 2015, Dr. Mathias opined that Plaintiff would require 10-minute breaks every two hours. Tr. 358.

The ALJ only assigned some weight to "the various work status reports," for four reasons: (1) the opinions were "brief forms and temporary in nature"; (2) Plaintiff experienced improvement with treatment, therefore, the forms do not clearly reflect Plaintiff's long-term capacities; (3) the forms "rendered opinions on topics that are not true functional opinions, such as the claimant's progress and anticipated return to work dates"; and (4) "there was little to no medical explanation or analysis included on such forms as to the basis for the opinions, or to explain why

the restrictions change, sometimes month to month." Tr. 23.

The ALJ's first two reasons for rejecting the work status reports, that they were brief, temporary, and not reflective of Plaintiff's long-term capacities, is not supported by substantial evidence. The majority of the opinions during the worker's compensation claim support Plaintiff's need for additional breaks throughout the workday. These opinions were concluded by the May 14, 2015, opinion of Dr. Radu that Plaintiff had reached maximum medical improvement and continued to require additional breaks throughout the workday. Tr. 347. Reviewing the record as a whole, these opinions were neither brief or temporary and reflected Plaintiff's long-term capacity.

The ALJ's third reason for rejecting the work status reports, that they were "not true functional opinions, such as the claimant's progress and anticipated return to work dates," is a misstatement of the law. Medical opinions are defined as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis, and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). Prognosis is specifically included in the Regulations' definition of medical opinions. Therefore, this reason cannot support the ALJ's rejection of the opinions.

The ALJ's fourth reason for rejecting the work status reports, that there was little or no medical explanation on the forms, is not a specific and legitimate. The

Ninth Circuit has expressed a preference for narrative opinions over opinions expressed on a check-the-box form.  *See Murray v. Heckler*, 722 F.2d 499, 501 (9th Cir. 1983).  However, check-the-box forms that do not stand alone, but are supported by records should be "entitled to weight that an otherwise unsupported and unexplained check-box form would not merit."  *Garrison v. Colvin*, 759 F.3d 995, 1013 (9th Cir. 2014).  The records from the worker's compensation claim include medical evidence that support these forms, including the evaluations discussed above showing limited ranges of motion in the lumbar spine, reduced sensation in the right lower extremity, and positive straight leg raising tests on the right.  Tr. 544-46, 571-72, 712.  They also include progress reports from providers showing continued weakness and radiculopathy in the right lower extremity.  Tr. 509, 517, 520, 524, 532.  They also include an MRI showing a protrusion effacing the exited right L1 nerve.  Tr. 527.  Therefore, since these check-the-box forms do not stand alone, this reason fails to meet the specific and legitimate standard.

Defendant combined her discussion of the worker's compensation evaluations and the work status reports into a single argument and asserted that any error in the rejection of these opinions was harmless because they all predated the alleged onset date.  ECF No. 14 at 15.  The Ninth Circuit has found that opinions that predate the alleged onset date of disability are of limited relevance.  *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008).  However, in *Carmickle*, the provider gave a functional opinion weeks prior to the on-the-job-injury that was the

basis for Plaintiff's onset date, and the Court upheld the ALJ's rejection of the opinion because it was given "at a time when Carmickle was working two jobs that he never indicated having trouble performing before his on-the-job-injury." *Id*. at 1158, 1165. Therefore, the instant case is distinguishable. Plaintiff was injured in an on-the-job accident, and the worker's compensation evaluation and work status report opinions postdate this on-the-job accident. While these opinions predate her alleged onset date for DIB, the date of injury is not the only factor used to determine the onset date for DIB purposes. "The onset date is the first day the claimant meets the definition of disability or statutory blindness as defined in the Social Security Act (Act) and regulations." POMS DI 25501.200. "To be entitled to disability benefit sunder title II of the Act. . . a claimant must file an application, meet the statutory definition of disability, and satisfy the applicable non-medical requirements." S.S.R. 18-1p. The definition of disability requires that a claimant not be performing substantial gainful activity. 42 U.S.C. § 423(d)(1) ("The term 'disability' means inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months"); 20 C.F.R. § 404.1520(a)(4)(i) (step on of the sequential evaluation process). Therefore, the date a claimant stops performing substantial gainful activity is a factor to consider in determining an onset date. S.S.R. 18-1p. Here, Plaintiff was injured in an on-the-job accident. She returned to work at an

accommodated position and continued to earn income at the substantial gainful

activity level.  Eventually, the accommodated position ended.  In this case, the

appropriate onset date is not the date of Plaintiff's on-the-job injury, but the date her

accommodated position ended and she stopped earning income at the substantial

gainful activity level.  The medical opinions that address her functional abilities after

the on-the-job injury but before her accommodated position ended are still relevant

to the analysis of her RFC determination.  Therefore, the ALJ's error in the

treatment of the opinions were not harmless.

### C.    Felicia Radu, M.D.

On May 14, 2015, Dr. Radu found that Plaintiff had "reached maximal

medical improvement and is permanent and stationary."  Tr. 347.  She further opined

that Plaintiff would require "10 minute stretch breaks every 60 minutes as needed."

*Id*.  The ALJ rejected this opinion:

> The opinions regarding improvement and whether the claimant is
> permanent and stationary are irrelevant to the determination herein.
> Furthermore, the percentage ratings useful in Worker's Compensation
> claims poorly translate in a way that is useful in the functional
> determination herein.  The opinion is also vague in that the specific
> limitations for stooping, bending, kneeling, and squatting is not
> indicated in terms of frequency.  Thus, the claimant's *maximum*
> capacity with respect to each task is still unknown.

Tr. 23.  However, Plaintiff asserts that this opinion is very relevant, ECF No. 13 at

8-9, and the Court agrees.

The majority of the Plaintiff's work status reports agree that Plaintiff requires

additional breaks to stretch.  *See supra*.  Dr. Radu's opinion asserts that this requirement is not going to go away with further treatment.  Tr. 347 ("The patient has reached maximal medical improvement and is permanent and stationary.").  The ALJ's finding of vagueness only pertained to the postural limitations and not the need for additional breaks.  Tr. 23.  Therefore, the ALJ has failed to provide a specific and legitimate reason for rejecting Dr. Radu's opinion that Plaintiff requires a ten-minute break every 60 minutes.

### D.    State Agency Medical Reviewer

On June 27, 2017, Louis Chelton, M.D. from the Washington Disability Determination Services (DDS) accepted the original opinion from an earlier DDS review of the records, but clarifying that Plaintiff would need to "[a]lternate 5 min Standing/walking after every 55 min Sitting; Normal breaks are sufficient when standing."  Tr. 839.

The ALJ gave this opinion some weight, but in doing so she failed to provide a reason for rejecting the need to alternate standing/walking every 55 minutes of sitting:

> The undersigned agrees that the light level lifting, carrying, standing, walking, and sitting capacities are consistent with the claimant's mild spine images and her usually normal documented gait (Exhibits 2F and 5F).    However, the undersigned finds that additional postural restrictions are necessary given the claimant's restricted range of motion in her spine (Exhibit 2F/57).    The undesigned also finds the reaching, handling, fingering, and feeling limitations were appropriate given the claimant's mild cervical spine images (Exhibits 1F/2 and 5F/226).

Tr. 22. Social Security Ruling (S.S.R.) 96-8p states that the RFC assessment "must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." The ALJ's failure to provide a reason for rejecting the opined need to stand/walk for five minutes every 55 was minutes and then not include it in RFC is an error.

The ALJ made a general statement that she assigned all previously discussed opinions "some weight," "because they are so utterly contradictory." Tr. 21. However, this is a general statement and fails to meet the specific and legitimate standard. *See Embrey*, 849 F.2d at 421-22 (The ALJ is required to do more than offer her conclusions, she "must set forth [her] interpretations and explain why they, rather than the doctors', are correct." ). Furthermore, it is not supported by substantial evidence. The record reviewed as a whole demonstrates that the opinions are consistent in terms of Plaintiff's need for additional breaks.

Additionally, the ALJ found that "the longitudinal record does not support the need for a sit/stand option," because Plaintiff was able to continue working after the initial injury. Tr. 20. The ALJ was not addressing these medical opinions when discussing the sit/stand option. When setting forth a hypothetical for the vocational expert, the ALJ clearly identified a sit/stand option was the ability to sit or stand during the workday, but not leave the work station when doing so. Tr. 23. The opinions at issue require Plaintiff take breaks to walk, i.e., leave the work station, or

stretch, i.e. not perform the work related tasks.  Therefore, these opinions are not consistent with a finding of a sit/stand option as the ALJ defined it for the vocational expert at the hearing.

Therefore, this case is remanded for the ALJ to properly address the opinions discussed above regarding Plaintiff's alleged need for additional breaks throughout the workday to walk or stretch.

**2.    Plaintiff's Symptom Statements**

Plaintiff challenges the ALJ's treatment of her symptom statements.  ECF No. 13 at 11-15.

It is generally the province of the ALJ to make determinations regarding the reliability of Plaintiff's symptom statements, *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995), but the ALJ's findings must be supported by specific cogent reasons, *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990).  Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing."  *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Lester*, 81 F.3d at 834.

The ALJ found Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 17.  The evaluation of a claimant's symptom statements and their resulting limitations relies, in part, on the assessment of the medical evidence.  *See* 20 C.F.R.

§ 404.1529(c); S.S.R. 16-3p.  Therefore, in light of the case being remanded for the ALJ to readdress the medical opinions in the file, a new assessment of Plaintiff's subjective symptom statements will be necessary.

### 3.    Steps Four and Five

Plaintiff challenges the ALJ's determinations at steps four and five.  ECF No. 13 at 15-18.  Plaintiff's step four and five challenges are derivative of her argument that the ALJ failed to properly weigh the medical opinions addressed above.  Since the case is being remanded for the ALJ to properly address the opinions concerning Plaintiff's need to take additional breaks, the ALJ will readdress steps four and five. Additionally, Plaintiff challenges the ALJ's finding that she would have transferable skills from her work as a customer service clerk and the impact this has on the application of the GRIDS rules.  ECF No. 13 at 18.  On remand the ALJ will call a vocational expert to further address transferable skills.

## CONCLUSION

Plaintiff requests that the Court remand the case for an immediate award of benefits.  ECF No. 17 at 10-11.

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court.  *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989).  An immediate award of benefits is appropriate where "no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed," *Varney v. Sec'y of Health &*

*Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988), or when the delay caused by remand would be "unduly burdensome[.]" *Terry v. Sullivan*, 903 F.2d 1273, 1280 (9th Cir. 1990); *see also Garrison*, 759 F.3d at 1021 (noting that a district court may abuse its discretion not to remand for benefits when all of these conditions are met). This policy is based on the "need to expedite disability claims." *Varney*, 859 F.2d at 1401. But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a claimant disabled if all the evidence were properly evaluated, remand is appropriate. *See Benecke*, 379 F.3d at 595-96; *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).

The Court finds that further administrative proceedings are appropriate. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103-04 (9th Cir. 2014) (remand for benefits is not appropriate when further administrative proceedings would serve a useful purpose). Here, the ALJ must readdress the numerus opinions that Plaintiff requires additional breaks throughout the workday. The opined frequency and length of these breaks vary. Therefore, the ALJ must clearly define the frequency and length and address whether Plaintiff is stepping away from the work area or unable to perform work tasks during these additional breaks in her the RFC determination. She must then readdress Plaintiff's symptom statements and the determinations made at steps four and five. In addition, the ALJ should supplement the record with any outstanding medical evidence prior to

the date last insured and take additional testimony from a vocational expert at any remand proceedings.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment, ECF No. 13, is **GRANTED, in part,** and the matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

2. Defendant's Motion for Summary Judgment, ECF No. 14, is **DENIED**.

**IT IS SO ORDERED**.  The District Court Clerk is directed to enter this Order and provide copies to counsel.  Judgment shall be entered for Plaintiff and the file shall be **CLOSED**.

**DATED** October 13, 2021.

_____
LONNY R. SUKO
Senior United States District Judge

ORDER ~ 23